IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PATRICIA INGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | _____ |
| IQ DATA INTERNATIONAL, INC. | ) | |
| and TRANS UNION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15, Plaintiff Patricia Inge respectfully shows the Court the following:

### Parties, Jurisdiction and Venue

1.      Plaintiff Patricia Inge is an individual and a "consumer" under 15 U.S.C. § 1681a(c).

2.      Defendant IQ Data International, Inc. ("IQ Data") is a Washington corporation that is authorized to transact business in the State of Georgia.  IQ Data is subject to the jurisdiction of this Court and may be served with process by serving its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

3.      Defendant Trans Union, LLC ("Trans Union") is a Delaware limited liability company.  Trans Union is a "consumer reporting agency" under 15 U.S.C.

- 1 -

§ 1681a(f).  Trans Union is authorized to transact business in the State of Georgia, is subject to the jurisdiction of this Court and may be served with process by serving its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

4.    The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the claims asserted in this civil action arise under the laws of the United States, specifically 15 U.S.C. § 1681 *et seq.*, which is also known as the Fair Credit Reporting Act ("FCRA").

5.    Venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b)(1) and Local Rule 3.1(B)(1)(a).

Factual Background

6.    In August 2024, Ms. Inge rented an apartment at The Pynes in Austell, Georgia (the "Apartment").  By its express written terms, her lease commenced on April 14, 2024 and ended on May 13, 2025.

7.    In early 2025, Ms. Inge was behind on paying her rent on the Apartment.

8.    On February 13, 2025, the landlord for the Apartment commenced eviction proceedings against Ms. Inge in the Magistrate Court of Cobb County, Georgia, Civil Action No. 25-E-03359 (the "Dispossessory Case").

9. On March 7, 2025, Ms. Inge filed an Answer in the Dispossessory Case, denying the landlord's claims.

10. In her Answer, Ms. Inge also informed the landlord and the court that, rather than be evicted, she would voluntarily move out of the Apartment before the Dispossessory Case was called for a hearing.

11. Ms. Inge voluntarily moved out of the Apartment on March 20, 2025.

12. The hearing in the Dispossessory Case was held the following day, on March 21, 2025.

13. Ms. Inge was late for the hearing due to traffic. By the time she arrived, the court had already entered a default judgment against her (the "Default Judgment").

14. The Default Judgment granted the landlord a writ of possession, but awarded no money damages to the landlord.

15. In May 2025, after the Default Judgment was entered and after Ms. Inge had vacated the Apartment, Ms. Inge learned that the landlord was still charging her rent and utility fees for the Apartment.

16. On May 19, 2025, Ms. Inge emailed the landlord, demanding that the landlord immediately cease charging her rent, utility fees and all other charges and reminding the landlord that she had been evicted and had moved out of the Apartment.

17. In response, the landlord stated that it was not aware that Ms. Inge had vacated the Apartment and had not received "prior written notice" that Ms. Inge had moved out. That statement was preposterous and clearly false, as the landlord had filed the Dispossessory Case against Ms. Inge and had obtained a judgment of eviction against Ms. Inge months earlier.

18. Nevertheless, the landlord acknowledged that Ms. Inge had, indeed, vacated the Apartment and promised, in writing on May 19, 2025, that "we will proceed with stopping all further charges as of today's date."

19. Ms. Inge disputed owing any money to the landlord after the date the Default Judgment was entered, and considered the matter closed.

20. Approximately three months later, on August 25, 2025, Ms. Inge received another email from the landlord stating that "her tenancy" at the Apartment "concluded on 8/21/2025." That email attached a document entitled "Move Out Statement," which purported to assess charges for rent, water/sewer fees, trash collection, pest control, etc. from June 1, 2025 to August 21, 2025. The charges reflected on the Move Out Statement totaled $13,014.34 (the "Alleged Debt").

21. The content of the landlord's August 25, 2025 email, described above, was false. Ms. Inge's tenancy at the Apartment concluded in February 2025, when she was evicted and moved out. And, the landlord had promised, in writing, that

- 4 -

all further charges to Ms. Inge would stop as of May 19, 2025, and the charges reflected on the Move Out Statement were for June, July and August 2025.

22.   Thereafter, the landlord retained Defendant IQ Data, which is a collections agency, to collect the Alleged Debt from Ms. Inge.

23.   In an effort to collect the Alleged Debt from Ms. Inge, IQ Data furnished information to national consumer reporting agencies, including Defendant Trans Union, stating that Ms. Inge owed $13,453 to the landlord.

24.   The information that IQ Data furnished to Trans Union regarding Ms. Inge was inaccurate and derogatory.  Nevertheless, Trans Union included that information in Ms. Inge's Trans Union credit file and sold consumer reports containing that information to third parties.

25.   In August 2025, Ms. Inge became aware that the Alleged Debt appeared on her Trans Union credit report.

26.    In an effort to correct the inaccurate and derogatory information regarding the Alleged Debt that IQ Data had furnished to Trans Union, Ms. Inge exercised her rights under 15 U.S.C. §§ 1681i(a) and 1681s-2(b) by disputing that information with Trans Union (the "Disputes").

27.   In her Disputes, Ms. Inge identified herself and explained that she did not owe the Alleged Debt because she had been evicted, she had moved out of the Apartment, the court had not awarded money damages to the landlord in the

Dispossessory Case, and the charges comprising the Alleged Debt all related to a time period after the landlord had promised to stop making charges to her.  Ms. Inge also included relevant documents with her Disputes, proving that she did not owe the Alleged Debt.

28.    Under 15 U.S.C. § 1681i(a), Trans Union was required to make reasonable reinvestigations of Ms. Inge's Disputes, which it failed to do.  Trans Union failed to consider and verify the information provided by Ms. Inge with her Disputes, including the supporting documentation.

29.     In compliance with 15 U.S.C. § 1681i(a), Trans Union was required to and did provide notice of Ms. Inge's Disputes to IQ Data.

30.    Upon receipt of notice of the Disputes from Trans Union, IQ Data was required to conduct reasonable reinvestigations of the Disputes in compliance with 15 U.S.C. § 1681s-2(b).

31.    IQ Data failed to conduct reasonable reinvestigations of the Disputes by *inter alia*, (i) failing to communicate with the landlord regarding Ms. Inge's Disputes and (ii) failing to review its own records, including the landlord's file and communications with Ms. Inge, the file from the Dispossessory Case and (iii) failing to review the documents supplied by Ms. Inge with her Disputes.

32.    Following IQ Data's negligent and/or willful failure to conduct reasonable reinvestigations of the Disputes, IQ Data informed Trans Union that the information it had furnished to them regarding Ms. Inge was accurate.

33.    Thus, inaccurate and derogatory information remained on Ms. Inge's Trans Union consumer reports and is still on her Trans Union consumer reports to this day.

34.    As a proximate result thereof, Ms. Inge has suffered actual damages, including but not limited to credit denials and emotional distress, such as humiliation and embarrassment, frustration, and anxiety over her inability to obtain additional credit and secure housing.

### Count 1 – Violation of 15 U.S.C. § 1681s-2(b) by IQ Data

35.    IQ Data negligently, or in the alternative recklessly and/or willfully, violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable reinvestigations of the Disputes as alleged in Paragraphs 31-32 above.

36.    As a proximate result thereof, Ms. Inge has suffered and is entitled to recover actual damages as alleged in Paragraph 34 above in an amount to be proven at trial as allowed by 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1).

37.    As a result of IQ Data's reckless and willful violations of 15 U.S.C. § 1681s-2(b), Ms. Inge is entitled to recover statutory damages in the amount of $1,000 as allowed by 15 U.S.C. § 1681n(a)(1)(A).

38.    As a result of IQ Data's reckless and willful violations of 15 U.S.C. § 1681s-2(b), Ms. Inge is also entitled to recover punitive damages as allowed by 15 U.S.C. § 1681n(a)(2).

39.    Ms. Inge is also entitled to recover her costs of this action and reasonable attorneys fees as allowed by 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2).

<u>Count 2 – Violation of 15 U.S.C. § 1681i(a) by Trans Union</u>

40.    Trans Union negligently, or in the alternative recklessly and willfully, violated 15 U.S.C. § 1681i(a) by failing to conduct reasonable reinvestigations of the Disputes as alleged in Paragraph 28 above.

41.    As a proximate result thereof, Ms. Inge has suffered and is entitled to recover actual damages as alleged in Paragraph 34 above in an amount to be proven at trial as allowed by 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1).

42.    In the alternative and as a result of Trans Union's reckless and/or willful violations of 15 U.S.C. § 1681i(a), Ms. Inge is entitled to recover statutory damages in the amount of $1,000 as allowed by 15 U.S.C. § 1681n(a)(1)(A).

43.    As a result of Trans Union's reckless and/or willful violations of 15 U.S.C. § 1681i(a), Ms. Inge is also entitled to recover punitive damages as allowed by 15 U.S.C. § 1681n(a)(2).

44.     Ms. Inge is also entitled to recover her costs of this action and reasonable attorneys fees as allowed by 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2).

WHEREFORE, Plaintiff Patricia Inge respectfully prays that the Court:

1.     Issue process to Defendants;

2.     Conduct a trial by jury of all claims asserted herein;

3.     Enter judgment in her favor as consistent with the jury's verdict; and,

4.     Grant her such other and further relief as it deems just and necessary.

This 1st day of April, 2026.

**MCRAE BERTSCHI & COLE LLC**
1872 Independence Square, Suite D
Dunwoody, Georgia 30338

*/s/ Craig E. Bertschi*
Craig E. Bertschi
Georgia Bar No. 055739
ceb@mcraebertschi.com
678.999.1102

*Counsel for Plaintiff*